**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ABD MONROE, INC., | : | |
| | : | |
| Plaintiff, | : | **OPINION** |
| | : | |
| v. | : | Civil Action No. 04-1412 (WHW) |
| | : | |
| MONROE TOWNSHIP (a municipal | : | |
| corporation of the State of New Jersey), | : | |
| MONROE TOWNSHIP MUNICIPAL | : | |
| UTILITIES AUTHORITY (a duly constituted | : | |
| public body and municipal agency of the | : | |
| Township of Monroe, Middlesex County, | : | |
| New Jersey), RICHARD DOMALEWSKI | : | |
| (individually and as a Staff Engineer for | : | |
| Monroe Township Municipal Utilities | : | |
| Authority), ERNEST W. FEIST, P.E. | : | |
| (individually and as a Staff Engineer for | : | |
| Monroe Township), and FEIST | : | |
| ENGINEERING, INC. (a corporation of the | : | |
| State of New Jersey), | : | |
| | : | |
| Defendants. | : | |

**Walls, Senior District Judge**

Defendants Monroe Township, Ernest W. Feist (in both his official and personal

capacities), and Feist Engineering, Inc. move for summary judgment on all counts of the

plaintiff's complaint.  Their motions are granted in part and denied in part. Defendants Monroe

Township and Ernest Feist, in his official capacity, (collectively the "Township Defendants"),

move to strike certain evidence submitted by the plaintiff in opposition to the summary judgment

motions.  They also move to strike all of the plaintiff's contract-based claims. The motion to

NOT FOR PUBLICATION

strike is granted in part and denied in part. The Township Defendants also move for sanctions pursuant to Rule 11; this motion is denied.

## FACTS AND PROCEDURAL BACKGROUND

Plaintiff ABD Monroe Inc. ("ABD") is a developer of single family homes. In July 1998, it acquired property in Monroe Township, New Jersey on which it would construct a residential development called Pine View at Monroe (the "Development" or "Pine View"). Before ABD purchased the property, its predecessor-in-title had obtained preliminary major subdivision approval, in December 1995, and final major subdivision approval, in June 1997, for the development. ABD commenced construction on the development in August 1998.

ABD now brings this suit against Monroe Township (the "Township"), Ernest Feist, in both his personal capacity and his official capacity as the Township Engineer, and Feist's Company, Feist Engineering, claiming numerous constitutional and state law violations related to the inspection, tree removal and detention basin maintenance fees that ABD was charged by the defendants during the construction of the development.

The Township had previously moved to dismiss ABD's constitutional claims. This Court granted the motion in part, dismissing the procedural due process claim, and denied it in part. All the defendants now move for summary judgment on both the constitutional and state law claims. The Township Defendants move to strike certain evidence relied on by ABD in its opposition to the summary judgment motions and to strike ABD's contract-based state law claims. They also move for sanctions pursuant to Rule 11. The Court heard oral argument on these motions on November 26, 2007.

NOT FOR PUBLICATION

The following undisputed facts form the basis of ABD's claims:

***Retention Basin Ordinance***

Before ABD purchased the Pine View property and before its predecessor-in-title had obtained final approval for the development, but after it had obtained preliminary approval, on April 8, 1997, the Township enacted Ordinance 0-4-97-007 (the "Detention Basin Ordinance"). This ordinance required single family residential developers, who dedicate storm water detention/retention basins, to pay an escrow fee to the Township for future maintenance of the basins. The Ordinance required that the maintenance fee be paid before the Township would issue certificates of occupancy.

ABD opposed the maintenance fee assessment and sent a letter to the Township voicing its objection.  The Township responded, by way of letter dated April 11, 2000, that ABD was required to pay the maintenance fee. The assessment for ABD's development amounted to approximately $750 per house for fifty houses. Eventually, ABD made the escrow payment.  The detention/retention basins at Pine View were then inspected, approved, and dedicated to the Township becoming Township property.

Plaintiff claims the following in relation to the Detention Basin Ordinance: (a) the Township violated ABD's substantive due process rights when it, in violation of state law, applied the Ordinance to the development after preliminary approval had been obtained; (b) the Township violated ABD's equal protection and substantive due process rights when it required ABD to pay the maintenance fee but did not require other similarly-situated developers to do so; (c) the Township breached its contract with ABD and its duty of good faith and fair dealing when

**NOT FOR PUBLICATION**

it applied the Ordinance to ABD; and (d) the Township was unjustly enriched when it required

ABD to make payments into the detention basin escrow.

***Tree Planting/Removal Fees***

During construction of the development, ABD was required to pay, and paid, a total of

$15,400 for tree planting/removal. This sum included: $4,850 for tree removal on August 28,

1998, $4,800 for tree removal on December 8, 1998, and $5,750 for site plan review in

conjunction with tree planting ($10 per tree for 575 trees).  The Township had various tree

removal ordinances in effect for a number of years. The parties disagree whether ABD was

required to pay these fees pursuant to an ordinance that was in effect before the preliminary and

final approvals or an ordinance passed by the Township after that time. ABD argues that the

earlier ordinances did not apply to ABD and did not require it to make payments for tree

replanting. The Township, on the other hand, argues that ABD was subject to the earlier

ordinances and points to the fact that ABD's predecessor-in-interest had previously paid $5,750

for site-plan review in conjunction with tree planting. The tree removal fees are intended for a

designated fund which is to be used to promote environmental enhancement programs such as

tree planting.

Plaintiff makes the following allegations related to the tree planting/removal fees: (a) the

Township violated ABD's substantive due process rights when it, in violation of state law,

applied an ordinance to ABD after ABD had final approval for the development; (b) the

Township violated ABD's equal protection and substantive due process rights when it required

ABD to pay tree removal fees but did not require other similarly situated developers to make

**NOT FOR PUBLICATION**

such payments; (c) the Township breached its contract with ABD and its duty of good faith and

fair dealing when it applied the ordinance to ABD; (d) the Township was unjustly enriched when

charged ABD the tree removal fees; and (e) the Township fraudulently induced ABD to make the

payments when it misrepresented that it intended to use the monies tendered for the replanting of

trees.

### *Inspection Fees*

ABD posted a performance bond which attached a list of improvements to be performed

at Pine View.  Feist Engineering, as the Township Engineer, was required to inspect these

improvements and entitled to obtain reimbursements from the developer's escrow account for the

inspections it performed. The Township Engineer could require ABD to deposit up to 5% of the

cost of the site improvements into an escrow account which would be used to pay for these

inspections. Payments into the account were made in installments.  ABD received bank

statements which reflected the amounts being deducted from the escrow account.  On August 1,

1999, Feist sent ABD a letter informing it that an additional $30,000 was needed in the account.

The letter requested the payment be made by August 6, 1999.  ABD objected to making this

payment.  On August 31, 1999, Feist wrote to the Township Construction Official requesting that

a Stop-Work Order be issued on Pine View due to ABD's failure to pay.  ABD made the $30,000

payment by August 31, 1999.  In June 2000, the Township requested, and ABD made, a fourth

$30,000 payment to the escrow account.

Plaintiff alleges the following in relation to the inspection fees: (a) the defendants

violated ABD's substantive due process rights when Feist made improper charges to ABD's

NOT FOR PUBLICATION

escrow account and the Township failed to carefully review Feist's bills; (b) the Township and Feist violated ABD's substantive due process rights when they did not follow the procedures set out by state law for requiring additional deposits into the escrow account; (c) the Township and Feist violated ABD's equal protection and substantive due process rights when they required ABD to make a deposit into the escrow account in a shorter time period than other developers were given; (d) the Township breached its contract with ABD and its duties of good faith and fair dealing when it made improper charges to ABD's escrow account; (d) the Township and Feist were unjustly enriched when they collected these inspection fees; and (e) the Township and Feist fraudulently induced ABD to make the payment by intentionally deceiving ABD that inspections were required and/or performed while knowing that all improvements on the development had been completed or were substantially complete.

*Atmosphere of Impropriety and Self-dealing*

ABD also makes generalized allegations of an atmosphere of impropriety and self-dealing in the Township. It characterizes this alleged wrongdoing as "yet another example of a local government's abuse of power that has become all too commonplace in the State of New Jersey." (Pls' Opp. at 1.)  Specifically, in the context of its substantive due process claim, the plaintiff alleges that (1) the Mayor "pressured" ABD to do special favors for his friends; (2) the building department performed "special inspections" for friends on certain homes in the development; and (3) the appointment of Feist to the position of Township Engineer "was, at best, suspicious."

**NOT FOR PUBLICATION**

**MOTION TO STRIKE**

The Township Defendants ask the Court to strike certain evidence submitted by ABD in support of its opposition to the motions for summary judgment. Specifically, they request that the following evidence be struck as inadmissable hearsay which cannot be relied upon to oppose summary judgment: (1) testimony by ABD's representative, Jacob Bogatch, that his secretary told him that the mayor's secretary had called and told her that the Mayor would be "very happy" if ABD completed a certain house by Christmas; (2) Bogatch's testimony that a certain building inspector, whose name and description Bogatch could not recall, had told "Andy," ABD's "super," that he was going to be doing a certain inspection "completely different than any other inspection that I did before because the hairdresser [who is purchasing the house] is doing the hair of this woman from the building department and she asked me to do it"; (3) Bogatch's testimony that the project manager of the nearby Hallmark Homes development, whose name he could not recall, told him that Hallmark Homes did not have to pay for tree clearing in their development; and (4) ABD's assertion, without citation to the record, that "other similarly situated builders in the Township also informed ABD that they were not required to contribute money to the detention basin escrow fund."

The Township Defendants also move to strike ABD's contract-based state law claims on the grounds that no contract existed between the parties. In light of the Court's rulings below on summary judgment as to the contract-based state law claims, this part of the motion requires no further discussion and is denied as moot.

NOT FOR PUBLICATION

## I.      Legal Standard

At the summary judgment stage, the party opposing summary judgment must produce evidence which could be "reduced to admissible evidence" at trial. <u>Celotex Corp. v. Cartrett</u>, 477 U.S. 317, 327 (1986).  As a general rule, hearsay evidence should not be considered unless the party offering the evidence can establish either that it can be reduced to a form that is admissible at trial, <u>Williams v. West Chester</u>, 891 F.2d 458, 466 n.12 (3d Cir. 1989), or that it is not inadmissible hearsay under the Federal Rules of Evidence, <u>Blackburn v. United Parcel Serv., Inc.</u>, 179 F.3d 81, 96 (3d Cir. 1999).  The "mere possibility that a hearsay statement will be admissible at trial, does not permit its consideration at the summary judgment stage." <u>Bouriez v. Carnegie Mellon Univ.</u>, 02-cv-2104, 2005 WL 2106582, *9 (W.D. Pa Aug. 26, 2005); <u>Proctor v. ARMDS</u>, 04-cv-899, 2006 WL 3392932, *4 (D.N.J. Nov. 21, 2006).

"[H]earsay produced in an affidavit opposing summary judgment may be considered if the out-of-court declarant could later present the evidence through direct testimony, i.e. 'in a form that would be admissible at trial.'" <u>Williams</u>, 891 F.2d at 466 n. 12.  However, a "hearsay statement by [an] unknown individual is not 'capable of being admissible at trial,' and [can] not be considered on a motion for summary judgment." <u>Philbin v. Trans Union Corp.</u>, 101 F.3d 957, 961 n.1 (3d Cir. 1996); <u>see also</u> <u>Manning v. Temple Univ.</u>, 157 Fed. Appx. 509, 514 (3d Cir. 2005)(holding that plaintiff's testimony regarding something that a Caucasian student known only as "Tracy" told her was "hearsay and therefore may not be considered at summary judgment").

**NOT FOR PUBLICATION**

**II.     Discussion**

Plaintiff does not dispute that all the statements in question in their current form are hearsay.  Plaintiff, however, contends that these statements can be "reduced to admissible evidence."

The first statement, allegedly made by the Mayor to his secretary, then by the secretary to ABD's secretary, and then by ABD's secretary to Bogatch, could be admissible evidence if the Mayor were called to testify.  ABD has not identified the Mayor as a potential witness, as required to do under Fed. R. Civ. P. 26(a) and (c).  However, Bogatch's deposition testimony was sufficient to put the defendants on notice that the Mayor may have relevant testimony, so the failure to disclose him was harmless and ABD will be permitted to rely on this evidence. See Fed. R. Civ. P. 37(c); Sunkett v. Misci, 183 F. Supp. 2d 961, 704 (D.N.J. 2002)(declining to exclude affidavit at summary judgment even though affiant was not disclosed in discovery because previous deponents had indicated that the undisclosed witness would have relevant testimony).  The motion to strike this statement is denied.

The second statement, allegedly made by an unidentified Township building inspector to ABD's super who has been identified only as "Andy" and then repeated by "Andy" to Bogatch, can not be reduced to admissible evidence. When asked at oral argument, plaintiff's counsel was unable to provide either a name for the building inspector or a last name for "Andy." Such vague descriptions are neither sufficient to identify the witnesses to be called at trial, nor sufficient to put the defendants on notice that these witnesses may be may be called.  Plaintiff can not be permitted to rely on this evidence at summary judgment. See Fed R. Civ. P. 37(c).  The motion to strike this statement is granted.

**NOT FOR PUBLICATION**

The third statement, allegedly made by an unidentified project manager working on the Hallmark Homes development run by Mr. Halpern to Bogatch, is simply a "hearsay statement by [an] unknown individual." <u>Philbin</u>, 101 F.3d at 961 n.1. Neither the plaintiff's counsel during oral argument nor its representative during his deposition was able to provide any concrete information as to the identity of the declarant. ABD cannot rely on this evidence to survive summary judgment. The motion to strike this statement is granted.

The fourth statement, allegedly made by "other similarly situated builders" to ABD, is made without any citation to deposition testimony. Not only is it unsupported by evidence, it is a statement by "an unknown individual" which cannot be relied on at summary judgment. <u>Id.</u> The motion to strike is granted.

## MOTIONS FOR SUMMARY JUDGMENT

**I.    Legal Standard**

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant and it is material if, under the substantive law, it would affect the outcome of the suit. <u>See</u> <u>id.</u> at 248. The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. <u>See</u> <u>Celotex</u>, 477 U.S. at 318.

NOT FOR PUBLICATION

Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts in question." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). To survive a motion for summary judgment, a non-movant must present more than a mere scintilla of evidence in his favor.  Woloszyn v. County of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005). The non-moving party must go beyond the pleadings and, by affidavits or other evidence, designate specific facts showing that they is a genuine issue for trial. Celetex, 477 U.S. at 324; Fed. R. Civ. P. 56(e).  Such affidavits must be based "on personal knowledge," establish "such facts which would be admissible," and "show affirmatively that the affiant is competent to testify in all matters stated therein." Maldonado v. Ramirez, 757 F.2d 48, 50 (3d Cir. 1985); see also J. Moore, W. Taggerts & J. Wicker Moore's Federal Practice § 56.22[1] (2d ed. 1985). "[C]onclusory statements, general denials, and factual allegations not based on personal knowledge [are] insufficient to avoid summary judgment." Olympic Junior, Inc. v. David Crystal, Inc., 463 F.2d 1141, 1146 (3d Cir. 1972); see also First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253 (1968).

At the summary judgment stage the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. See Anderson, 477 U.S. at 249. In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. Curley v. Klem, 298 F.3d 271, 277 (3d Cir. 2002).

-11-

NOT FOR PUBLICATION

## II.    Discussion

### A.    Substantive Due Process Claim

A non-legislative substantive due process claim requires (1) deprivation of a protected property interest by (2) government conduct which "shocks the conscience." United Artists v. Twp. of Warrington, 316 F.3d 392, 399 (3d Cir. 2003).

To satisfy the first element, the plaintiff must have a property interest that is "worthy of protection under substantive due process." DeBlasio v. Zoning Bd. of Adjustment for West Amwell, 53 F.3d 592, 598 (3d Cir. 1995). "[O]nly *fundamental* property interests are worthy of such protection." Id. at 599. In DeBlasio, the Third Circuit held that ownership was a property interest worthy of such protection, clarifying that "where the governmental decision in question impinges upon a landowner's use and enjoyment of property" the plaintiff has "established possession of a property interest worthy of substantive due process protection." Id. at 601[1]; see also Woodwind Estates Ltd. v. W.J. Gretowski, 205 F.3d 118, 123 (3d Cir. 2000) ("[Z]oning decisions, building permits, or other governmental permission required for some intended use of land owned by the plaintiffs implicated the kind of property interest protected by substantive due process."). In this case, the plaintiff alleges that the defendants restricted the use of its land through the imposition of various fees which it was required to pay if it wanted to continue construction. This satisfies the first element of a substantive due process claim.

The second element requires the plaintiff to point to a government action that is "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."

---

[1] Although DeBlasio was decided before the "shocks the conscience" standard was established in United Artists, its discussion of protected property interests in the land use context remains good law.

NOT FOR PUBLICATION

County of Sacramento v. Lewis, 523 U.S. 833, 848 n. 8 (1998). "Whether an incident 'shocks the conscience' is a matter of law for the courts to decide." Benn v. Universal Health Sys., 371 F.3d 165, 174 (3d Cir. 2004). While "[t]he measure of what is conscience-shocking is no calibrated yard stick," the test is intended to encompass "only the most egregious official conduct." United Artists, 316 F.3d at 399. Because "every appeal by a disappointed developer from an adverse ruling of the local planning board involves some claim of abuse of legal authority, ... it is not simply enough to give these state law claims constitutional labels such as 'due process' or 'equal protection' in order to raise a substantial federal question under section 1983." Id. at 402. In applying the standard to land use cases, courts have been particularly cautious to "avoid converting the federal courts to super zoning tribunals," Eichenlaub v. Twp. of Indiana, 385 F.3d 274, 285 (3d Cir. 2004), and to maintain "the proper proportions of constitutional, as opposed to ordinary tort, violations," Blain v. Twp. of Radnor, 167 Fed. Appx. 330, 333 (3d Cir. 2006).

The Third Circuit has consistently held that "[l]and-use decisions are matters of local concern, and such disputes should not be transformed into substantive due process claims based only on the allegations that government officials acted with 'improper motives.'" United Artists, 316 F.3d at 402. Even when land use decisions are motivated by the desire to collect fees from competing applicants, id., the desire to force a contribution to the municipality, Thronbury Noble, Ltd. v. Thronbury Twp., 112 Fed. Appx. 185, 188 (3d Cir. 2004), the desire to force the developer to use a particular type of labor, Cherry Hill Towers LLC v. Twp. of Cherry Hill, 407 F. Supp. 2d 648, 655 (D.N.J. 2006), or even personal dislike of the applicant, Bituminous Materials, Inc. v. Rice County, Minn., 126 F.3d 1068, 1071 (8th Cir. 1997), courts have

NOT FOR PUBLICATION

consistently held that improper motives are not conscience-shocking and do not violate

substantive due process.  In examining the motives of a municipality, courts have found that

unless a defendant's actions were "completely unrelated in any way to a rational land use goal,"

there is no substantive due process violation. Corneal v. Jackson Twp., 94 Fed. Appx. 76, 78 (3d

Cir. 2004).

       The Third Circuit has also held that "[a] bad-faith violation of state law remains only a

violation of state law" and does not rise to the conscience-shocking level of a substantive due

process violation. United Artists, 316 F.3d at 402 (quoting Chesterfield Dev. Corp. v. City of

Chesterfield, 963 F.2d 1102, 1105 (8th Cir. 1992), in which the Court held that allegations that

the City enacted a zoning plan and zoning ordinance in violation of the procedures required by

state law and then applied these illegal zoning enactments to the plaintiff did not rise to the level

of a substantive due process violation).

       In run of the mill land use disputes, courts seldom find that the conduct of the

municipality reaches conscience-shocking levels.  As example, in Eichenlaub, the Third Circuit

upheld a district court's ruling that the township's behavior was not conscience shocking as a

matter of law where the plaintiff had alleged that: "zoning officials applied subdivision

requirements to their property that were not applied to other parcels; that they pursued

unannounced and unnecessary inspection and enforcement actions; that they delayed certain

permits and approvals; [and] that they improperly increased tax assessments." 385 F.3d at 286.

       Courts in this Circuit typically only find "those actions involving corruption or self-

dealing, hampering development to interfere with otherwise constitutionally protected activity,

bias against an ethnic group, or a 'virtual taking'" to rise to the level of conscience-shocking

NOT FOR PUBLICATION

behavior. Blain, 167 Fed. Appx. at 333 (listing examples provided in Eichenlaub, 385 F.3d at 286).

While ABD has presented a slew of alleged wrongdoing by the Township and Feist, only one of these allegations raises a question of material fact whether there had been self-dealing from which a jury could conclude that the defendants violated the plaintiff's substantive due process rights. The remaining allegations fall far short of meeting this standard.

Viewing the evidence in the light most favorable to the plaintiff, there is an issue of material fact as to whether Feist was permitted to make charges to ABD's escrow account and the Township merely "rubber stamped" his invoices. In support of this allegation, Plaintiff has presented an expert report which opines that ABD's escrow account was improperly charged an estimated $30,000 for (a) inspections that should have been paid out of the Township's general engineering budget, (b) time Feist's employees spent at the site during which they were not working, and (c) administrative tasks performed by Feist's secretaries. The plaintiff also points to deposition testimony from the Township's Director of Planning and Zoning, Robert Tucker, who said that "it's not our position, certainly not my position, nor is it [my secretary's] position, to challenge the amounts of monies that a licensed professional is putting in. She is not looking at that." (Cohen Cert. Exh. W at T:28:16-19.) While unnecessary inspections are not conscience shocking in the absence of corruption or self-dealing, Eichenlaub, 385 F.3d at 286, unnecessary inspections when coupled with self-dealing may rise to a conscience-shocking level. A reasonable jury could conclude that Feist was motivated by the desire to line his own pockets rather than by a legitimate land use purpose when he made improper charges to ABD's escrow account. This jury could also conclude that giving such an inspector unfettered access to a

NOT FOR PUBLICATION

developer's escrow account shocks the modern conscience.  As such, the defendants' summary

judgment motions are denied on plaintiff's substantive due process claim based upon improper

inspection charges to ABD's escrow account.

ABD's allegations that the Township violated the procedures required by state law[2] in

imposing the tree removal, detention basin and inspection fees are not, as a matter of law,

conscience-shocking. Such a "bad faith violation of state law remains only a violation of state

law" and does not rise to the level of a substantive due process violation.  United Artists, 316

F.3d at 402.

Similarly, the allegation that other developers were more favorably treated in connection

with the, tree removal, detention basin and inspection fees, is not conscience shocking as a matter

of law. See Eichenlaub, 385 F.3d at 286.

Finally, ABD's allegations of an "atmosphere" of impropriety in the Township are mere

conjecture. ABD has not presented any admissible evidence from which a reasonable jury could

conclude that there was self-dealing within the Township that violated its substantive due process

rights.  First, the plaintiff's lengthy, but unsupported, discussion of Feist's appointment as

Township Engineer and his contributions to political parties is misplaced. Even if wrongdoing

was involved, it would not implicate ABD's property interests and could not form the basis of a

substantive due process violation. Similarly, the plaintiff's reference to two unrelated lawsuits in

which the Township was sued is irrelevant and inappropriate. The only admissible evidence

which the plaintiff presents is a statement allegedly made by the Mayor to his secretary and then

---

[2] Plaintiff alleges that the Township violated N.J.SA. 40:55D-49 which provides that the general terms and conditions of preliminary approval shall not be changed for three years, except that the municipality may impose ordinances related to "public health and safety."

NOT FOR PUBLICATION

relayed to ABD by that secretary that he would be "happy" if a particular house were completed by Christmas.  However, this evidence alone proves nothing and is insufficient for a reasonable jury to conclude that there was self-dealing within the Township which violated ABD's substantive due process rights.

Defendants' summary judgment motions on the substantive due process claim are denied as to ABD's claims based on the Township and Feist's actions related to the inspection fees.  The motions are granted as to plaintiff's allegations based on the detention basin fees, the tree removal fees, and a general "atmosphere of impropriety."

### B.      Equal Protection Claim

ABD asserts that it has been denied the equal protection of the laws because the defendants "intentionally and arbitrarily discriminated against the Plaintiff, and treated Plaintiff differently from other similarly situated developers without any rational basis." (Secon. Am. Compl. ¶ 61.)  Specifically, Plaintiff alleges the following equal protection violations: (1) other builders were not required to pay tree removal/re-planting fees which ABD was required to pay; (2) other builders were not required to pay detention basin fees which ABD was required to pay; (3) ABD was only given four or five days to make a deposit into their escrow account while other developers were given between a week and two weeks; (4) when Feist performed certificate of occupancy inspections for a house built on an isolated lot it was considered part of his duties as a Township Engineer and he was paid out of the general engineering account, but when Feist inspected houses in ABD's subdivision he charged ABD's escrow account; and (5) the Township applied the Detention Basin Ordinance to those developers with preliminary approval not those with final approval but in fact there is no difference between preliminary and final approval.

NOT FOR PUBLICATION

Plaintiff does not contend that it is a member of a protected class or group, but rather argues that it is a "class of one" under Village of Willowbrook v. Olech, 528 U.S. 562 (2000). "[T]o state a claim under [the "class of one"] theory, a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006).

"[T]o survive summary judgment plaintiff must do more than merely state an equal protection claim; it must produce evidence to support its claims of disparate treatment." Adams Parking Garage, Inc. v. City of Scranton, 33 Fed. Appx. 28, 32 (3d Cir. 2002). "In order to succeed [on a class of one equal protection claim], the [plaintiff] must demonstrate that [it was] treated differently than someone who is *prima facie* identical in all relevant respects." Purze v Vill. of Winthrop Harbor, 286 F.3d 452, 455 (7th Cir. 2002); see also Neilson v. D'Angelis, 409 F.3d 100, 104 (2d Cir. 2005).  Having established that it was treated differently, the plaintiff then bears a "heavy burden of demonstrating that defendants had no rational justifications for any allegedly different treatment among similarly situated property owners." Eichenlaub v. Twp. of Indiana, 214 Fed. Appx. 218, 224 (3d Cir. 2007). The municipality's action will be upheld if there is "any reasonably conceivable state of facts that could provide a rational basis." F.C.C. v. Beach Commc'ns, Inc., 508 U.S. 307, 313, 315 (1993). Those attacking the rationality have the burden of negating every conceivable basis which might support it. Id.  Under the rational basis standard, differential treatment does not violate the Equal Protection Clause if there is "a rational relationship between the treatment and a legitimate government interest." Heller v. Doe, 509 U.S. 312, 329 (1993). The Third Circuit has stressed that "[t]he 'irrational and wholly arbitrary'

**NOT FOR PUBLICATION**

standard is doubtless[ly] difficult for a plaintiff to meet in a zoning dispute, and we do not view

an equal protection claim as a device to dilute the stringent requirements needed to show a

substantive due process violation. It may be very unlikely that a claim that fails the substantive

due process test will survive under an equal protection approach." Eichenlaub, 385 F.3d at 287.

ABD has not presented evidence from which a reasonable jury could conclude that it was

in fact treated differently from a developer which was *prima facie* identical to it and that the

Township had no rational basis for this disparate treatment.  All of ABD's allegations fall far

short of what is required to survive summary judgment.  First, while ABD makes sweeping

assertions that other similarly situated developers were not required to pay the tree removal and

detention basin fees that ABD was required to pay, it provides no direct admissible evidence to

support these allegations.  When explicitly questioned at oral argument as to what evidence it

could present, counsel for ABD stated that they could obtain public records to demonstrate this.

However, now that discovery is complete, to defend against a summary judgment motion the

plaintiff must present more than the possibility that admissible evidence exists; it must point to

specific and concrete evidence which would support its claims.

Second, ABD's argument that builders who built homes on isolated lots were not charged

for certificate of occupancy inspections while ABD, a developer building a development

containing approximately fifty homes, was charged for these inspections fails on its face.  It is

not the role of this Court to now "sit as a superlegislature to judge the wisdom or desirability of"

Monroe Township's ordinance which distinguishes between developers and builders of single

family homes. Heller, 509 U.S. at 319-20.  The Township explains that this differential treatment

is based on the fact that "real estate developments anticipate construction of major items such as

NOT FOR PUBLICATION

roads, sidewalks, and storm water drainage, and require project-wide grading to be addressed –

all matters which do not apply to single home construction." (Township Defs.' Reply at 20.)

This is a "reasonably conceivable state of facts that [] provide[s] a rational basis for the

[Township's] classification." Heller, 509 U.S. at 320.  ABD has no equal protection claim based

on the Township's decision to differentiate between builders and developers.

     Similarly, ABD's argument that there was no real difference between preliminary and

final approval so its equal protection rights were violated when the Township chose to apply the

tree and detention basin fee ordinances to those developers with preliminary approval and not

those with final approval, also fails.  The decision by the Township to impose the ordinance on

those developers with preliminary approval, and not on those with final approval, is accorded a

strong presumption of validity. Id.  Since the "classification neither involv[es] fundamental rights

nor proceed[s] along suspect lines... [it] 'must be upheld against equal protection challenge if

there is any reasonably conceivable state of facts that could provide a rational basis for the

classification.'" Id. at 319.  Even if the Township did not  "actually articulate at any time the

purpose or rationale supporting its classification," there are a number of "reasonably

conceivable" justifications for the classification – developers with final approval have different

expectations about their rights under municipal ordinances and state law, developers with final

approval have invested larger amounts of money into the project, or construction on projects with

final approval is further advanced. See id. at 320.

     ABD's final allegation of disparate treatment comes closest to establishing a equal

protection claim, however it too fails. Plaintiff's allegation rests on (1) the fact that Feist faxed

ABD a letter on Sunday, August 1, 1999 requesting that it make its second installment payment

NOT FOR PUBLICATION

into the escrow account by the close of business on Friday, August 6, 1999, (Cohen Ex. O), and (2) Feist's deposition testimony that while there was "[n]o particular rule of thumb" as to how long developers were given to make payments into the escrow account, they were "[t]ypically given a week or two" to make the deposit and he did not think that other developers were given less than a week. (Cohen Ex. G 78; 80). However, at oral argument, ADB's counsel conceded that even though a stop-work order was issued on August 31, 1999, work on the development never stopped because ABD made the payment on that date, a full month after the request was made. Based on this evidence, no reasonable jury could conclude that ABD was actually treated differently from other developers. Even though it was *told* to make the payment to the escrow account within a workday week (5 days), rather than the "week" typically given, it was actually *given* a full month to make the payments without repercussion, much longer than Feist testified was typically given to developers. Furthermore, ABD has not established that those developers that Feist previously dealt with were *prima facie* identical to ABD, nor has it established that the Township had no conceivable rational reason for this differentiation. ABD has not produced sufficient evidence to survive summary judgment on its equal protection claims.

### C.   State Law Claims

1.   All Claims Based on Challenges to Charges to the Inspection Fee Escrow Are Barred by N.J.S.A. 40:55D-53.2a

N.J.S.A. 40:55D-53.2a defines the procedure by which an applicant can dispute the professional fees charged to its escrow account. Specifically, this statute provides, in relevant part, that first "[a]n applicant shall notify in writing the governing body ...whenever the applicant disputes the charges made by a professional for service rendered to the municipality [for] .... inspection of improvements." Next, "[i]f the matter is not resolved to the satisfaction of the

NOT FOR PUBLICATION

applicant, the applicant may appeal to the county construction board of appeals... any charge to an escrow account." An applicant "shall file his appeal within 60 days from the receipt of the municipal statements of activity against the deposit or escrow account." N.J.S.A. 40:55D-53.2a(a).

In Wynfield Corp. v. Killam Assoc., 385 N.J. Super. 20 (App. Div. 2006), the Appellate Division rejected a disgruntled developer's attempt to convert a dispute over improper billing to its escrow account into a class action against the municipality and the municipally-retained engineering firm alleging various common law claims, including fraud, unjust enrichment, and breach of fiduciary duty.  The Court held that the "plaintiff was *only* entitled to pursue an appeal against the Borough in order to obtain a credit to be applied to the escrow account it maintained with the Borough." Id. at 31 (emphasis added).  As the procedures outlined in N.J.S.A. 40:55D-53.2a were the "exclusive remedy" afforded a plaintiff, the Court dismissed the claims. Id. at 22.

ABD did not provide written notice to the governing body disputing the charges made by Feist to its escrow account. ABD did not file an appeal with the county construction board of appeals. And now, years after its right to file such an appeal has expired, ABD attempts to challenge these payments in federal court.  ABD's only explanation of its failure to follow the relief mandated by statute is that it would have been futile to provide written notice to the Township, (Pl's Opp. at 23), and that it was "scared" to do so, (Bogatch Depo., Stewart Cert. Ex. B, 109, 72). These arguments are unconvincing. Not only does the fact that ABD brings these claims years beyond the time frame provided for by the statute cast serious doubt on its explanations, but the statute itself provides safeguards for any retaliatory action by the municipality. See N.J.S.A 40:55D-53.2a(d)("During the pendency of the appeal, the municipality

-22-

NOT FOR PUBLICATION

or approving authority shall continue to ... inspect the development in normal course, and shall not withhold, delay, or deny... inspections...the reduction or release of performance or maintenance guarantees, the issuance of construction permits or certificates of occupancy, or any other approval or permit because an appeal has been filed or is pending under this section.").

The defendants' motions for summary judgment are granted on the portions of ABD's state law claims that challenge charges to ABD's escrow account.[3]  Because all the state law claims against Feist and Feist Engineering are based upon Feist's charges to ABD's escrow account, summary judgment is granted as to all state law claims against Feist and Feist Engineering.

2.   Breach of Contract Claim

To maintain an action for breach of contract, the plaintiff must establish that a valid contract existed between the plaintiff and the defendant. See Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc., 275 F. Supp. 2d 543, 566 (D.N.J. 2003)(holding that "to prevail on its breach of contract claim, defendant must prove ... a valid contract existed between plaintiff and

_____

[3] Defendants also argue that the plaintiff is time-barred from raising the remaining bases for its state law claims, the retention basin and tree removal fees, by R. 4:69-6. This rule provides that "[n]o action in lieu of prerogative writs shall be commended later than 45 days after the accrual of the right to review, hearing or relief claimed." R. 4:69-6.  However, this rule applies only to actions for a review of judicial, administrative agency, municipal or other proceedings, it does not apply when a plaintiff seeks damages under another form of remedy. O'Neill v. Twp. of Washington, 193 N.J. Super. 481, 486 (App. Div. 1984); Neelthak Dev. Corp. v. Twp. of Gloucester, 272 N.J. Super. 319, 324 (App. Div. 1994)(holding that where plaintiffs have been careful to assert non-prerogative writs causes of action in addition to seeking a prerogative writs review of municipal determinations the trial court should not have dismissed the non-prerogative writs claims based on untimeliness under R. 4:69-6).  Here, the plaintiff seeks more than a review of the Township's decision to require it to pay retention basin and tree removal fees, it seeks damages based on a number of state common law theories. Because this is not an action for prerogative writs, it is not time barred by R. 4:69-6.

NOT FOR PUBLICATION

defendant"); <u>Nat'l Util. Serv., Inc. v. Chesapeake Corp.</u>, 45 F. Supp. 2d 438, 448 (D.N.J. 1999)

(stating that "[t]o succeed on the motion for summary judgement on its breach of contract claim,

[plaintiff] must prove that it had a valid and binding contractual relationship with [defendants]" ).

A contract need not be in reduced to a single writing, or any writing at all, to form the basis of a

breach of contract claim.  However, to prove a valid contract existed, a party must prove that

there was an offer, acceptance and consideration. <u>See</u> <u>Smith v. SBC Commc'ns, Inc.</u>, 178 N.J.

265, 283 (2004).

The plaintiff provides a shifting theory regarding the existence of a contract between it

and the Township. In its opposition to the summary judgment motions, without any citation to

deposition testimony, documents or affidavits, the plaintiff simply states that ABD "entered into

a developer's agreement with the Township." (Pl.'s S.J. Opp. at 44.)[4]  Later, in its opposition to

the motion to strike, the plaintiff changes its tune slightly as it, again without citation to

deposition testimony, documents or affidavits, writes:

> "ABD has always maintained that the Township did indeed draft a simple
> developer's agreement and requested that ABD execute said document.
> Unfortunately, ABD does not have a copy of said agreement and the Township
> claims one never existed. However, even without a written developer's agreement

---

[4] In support of the proposition that a "developer's agreement" existed between ABD and
the Township, ABD cites to New Jersey caselaw which recognizes a developer's agreement as a
valid contract between a developer and a municipality. However, the "developer's agreements"
in question in those cases appear to have been written documents. <u>See</u> <u>Toll Bros. v. Bd. of
Chosen Freeholders of Burlington</u>, 388 N.J. Super 103, 115, 124 (App. Div. 2006)(discussing
"execution" of agreement and "conditions contained in the agreements"); <u>East Brunswick
Sewage Auth. v. East Mile Assocs., Inc.</u>, 365 N.J. Super. 120, 125 (App. Div. 2004)("In this case
the terms of the contract are clear, the Court must enforce them as written."); <u>Gruber v. Mayor &
Twp. Comm. of Raritan</u>, 39 N.J. 1, 4 (1962)(stating that the developers agreement was
"executed" on a specific date). ABD has produced no evidence from which a reasonable jury
could conclude that such a written "developer's agreement" was ever entered into.

NOT FOR PUBLICATION

> the parties nonetheless entered into an oral agreement to carry out the terms and
> conditions of the preliminary and final approval."

(Pl.'s Motion to Strike Opp. at 5.)  However, ABD provides absolutely no evidence that an oral

agreement existed.  Its claim as to the existence of the contract seems to rest on the proposition

that because the project was complicated it would have been impossible to complete without a

contract.  The Township counters that the obligations of ABD and the Township were set out in

the preliminary and final approval documents, which are resolutions of the Township Planning

Board approving ABD's application and did not form a contractual relationship between the

parties.

ABD has simply provided no evidence from which a reasonable jury could conclude that

either a written or oral contract existed between ABD and the Township. It has presented no

evidence from which a reasonable jury could conclude that there was an offer, acceptance and

consideration.  Summary judgment is granted as to the breach of contract claim.[5]

> 3.    Breach of Covenant of Good Faith and Fair Dealing Claim

Like a breach of contract claim, a breach of covenant of good faith and fair dealing claim

requires the existence of the contract.  Pepe v. Rival Co., 85 F. Supp. 2d 349, 390 (D.N.J.

1999)("The doctrine of good faith and fair dealing cannot ... create rights or obligations in the

---

[5] ABD's complaint does not allege a breach of contract claim against Ernest Feist or Feist
Engineering, yet in its opposition to the summary judgment motions ABD contends that it was
the beneficiary of a third-party agreement between the Township and Feist and that this contract
forms the basis of its breach of contract claim. However, ABD has pointed to no document,
deposition testimony or affidavit in support of the existence of such an argument.  Furthermore, it
has pointed to no contract provisions which would establish a developer like ABD as a third-
party beneficiary of the agreement. Even if the Court were to construe the plaintiff's complaint to
allege a breach of contract claim against Feist, summary judgment should be granted on behalf of
Feist on this claim.

**NOT FOR PUBLICATION**

absence of a valid contract."); Gil v. Related Mgmt. Co., 06-cv-2174, 2006 WL 2358574, *4

(D.N.J. Aug. 14, 2006)(Walls, J.)("[I]n order for plaintiff to bring a valid cause of action for a

breach of the covenant of good faith and fair dealing against the individual defendants, there

must be a contractual relationship between the individual defendants and the plaintiff."). Since,

for the reasons discussed in the context of the breach of contract claim, no reasonable jury could

conclude that a contract existed between the parties, it follows then that summary judgement is

granted to the defendants on the claim of breach of covenant of good faith and fair dealing.

### 4.   Unjust Enrichment Claim

To establish a claim for unjust enrichment under New Jersey law, "a plaintiff must show

both that the defendant received a benefit and that retention of that benefit without payment

would be unjust. The unjust enrichment doctrine requires that plaintiff show that it expected

remuneration from the defendant at the time it performed or conferred a benefit on defendant and

that failure of remuneration enriched defendant beyond its contractual rights." Bijur Lubricating

Corp. v. Devco Corp., 332 F. Supp. 2d 722, 734 (D.N.J. 2004)(Walls, J.)(quoting VRG Corp. v.

GKN Realty Corp., 135 N.J. 539, 641 (1994)).  An unjust enrichment claim is a quasi-contractual

claim which does not require the existence of a contract between the parties, but does require the

plaintiff to have had a reasonable expectation of compensation from the defendant. See VRG

Corp., 135 N.J. at 554; County of Essex v. First Union Nat'l Bank, 373 N.J. Super. 543, 550

(App. Div. 2004), rev'd in part, 186 N.J. 46, 56, 62 (2006)("The most common circumstance for

application of unjust enrichment is when a plaintiff has not been paid despite having had a

reasonable expectation of payment for services performed or a benefit conferred.")

NOT FOR PUBLICATION

The defendants contend, and the Court agrees, that the plaintiff has failed to put forth evidence which supports an unjust enrichment claim. The plaintiff has put forth no evidence from which a reasonable jury could conclude that ABD had a reasonable expectation of compensation from the Township. In fact, the Court finds it difficult to understand what possible expectation ABD could have had. Summary judgment on the unjust enrichment claim is granted.

5.      Fraudulent Inducement and Misrepresentation Claim

Under New Jersey law "a common-law fraud action has five elements: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." McConkey v. AON Corp., 354 N.J. Super. 25, 45-46, (App. Div. 2002) (citing Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997)). "Fraud requires clear and convincing proof." Id.

According to the complaint, ABD's fraudulent inducement claim rests on two grounds. The first, that the Township misrepresented that ABD had to pay inspection fees when in fact all inspections has already been completed, is, as discussed, barred by N.J.S.A. 40:55D-53.2a. The second, that the Township misrepresented that the tree removal fees would be paid into a fund which was used for tree-replanting, also fails. As an initial matter, the claim does not make sense in this context – ABD did not pay the tree removal fees because it relied on the Township's representation that the fees would go towards the replanting of trees, ABD paid the fees because it was required to do so by Township ordinance. Furthermore, the plaintiff simply has presented no evidence from which a reasonable jury could conclude that the Township made a material misrepresentation. The only evidence that ABD points to in support of its allegation is: (1)

**NOT FOR PUBLICATION**

Bogatch's testimony that Feist refused to give him an accounting of how funds were being used;

(2) testimony from a representative of the Township Shade Tree Commission that the

Commission was not involved in decisions about how the money from the fund was spent; and

(3) a transaction spreadsheet which lists total monthly expenditures from the fund, including

payments to Feist for "Mun. Tree Planting Plan."  This is not evidence to establish "clear and

convincing proof," of fraud.  Summary judgment is granted on the fraudulent inducement and

misrepresentation claims.

### MOTION FOR RULE 11 SANCTIONS

The Township Defendants have moved for sanctions pursuant to Rule 11 on three

grounds: (1) the plaintiff asserted contract-based claims when it was aware that no contract

existed between the parties; (2) the plaintiff relied on hearsay in opposition to the defendants'

summary judgment motions; and (3) the plaintiff made a request to the Township pursuant to the

Open Public Records Act, N.J.S.A. 47:1A-1, for an accounting of the Township's legal fees

spent on the lawsuit and then, in an effort to embarrass the Township into settling, informed the

media that the Township had spent more on legal fees defending a case relating to corruption

than it could have settled the lawsuit for.

### A.        Legal Standard

Pursuant to Rule 11, the Court may impose sanctions on the parties or their attorneys if

they have violated subdivision (b) of the Rule. Fed. R. Civ. P. 11(c). Under subdivision (b), an

attorney must certify that "to the best of [his or her] knowledge ... formed after an inquiry

reasonable under the circumstances" that: (1) papers submitted to the court are not "not being

presented for an improper purpose, such as to harass or to cause unnecessary delay or needless

NOT FOR PUBLICATION

increase in the cost of litigation"; (2) "the claims, defenses, and other legal contentions therein

are warranted by existing law or by nonfrivolous arguments for the extension, modification, or

reversal of existing law or the establishment of new law"; (3) "the allegations or other factual

contentions have evidentiary support"; and (4) "the denials of factual contentions are warranted

on the evidence or, if specifically so identified, are reasonably based on a lack of information or

belief." Fed. R. Civ. P. 11(b).

      "The legal standard to be applied when evaluating conduct allegedly violative of Rule 11

is reasonableness under the circumstances." Ford Motor Co. v. Summit Motor Prods., Inc., 930

F.2d 277, 289 (3d Cir. 1991)(citing Bus. Guides v. Chromatic Commc'ns Enter., Inc., 498 U.S.

533, 546-47 (1991)). Reasonableness in the context of Rule 11, is "an objective knowledge or

belief at the time of the filing of the challenged paper that the claim was well-grounded in law

and fact." Id.  Subjective good faith on the part of the attorney is insufficient to avoid sanction.

See Gaiardo v. Ethyl Corp., 835 F.2d 479, 482 (3d Cir. 1987)("[T]he Rule does not permit use of

the 'pure heart and empty head defense.'"). An attorney must "Stop, Think, Investigate and

Research before filing papers either to initiate a suit or to conduct the litigation." Id. at 482; see

also Becker v. Sherwin Williams, 717 F. Supp. 288, 296-97 (D.N.J. 1989). However, sanctions

are appropriate only if "the filing of the Complaint constituted abusive litigation or misuse of the

court's process."  Simmerman v. Corino, 27 F.3d 58, 62 (3d Cir. 1994).

    **B.**    **Analysis**

      As discussed in the context of the summary judgment motion, ABD first advanced a

theory that a written contract existed between it and the Township, later, while continuing to

contend that there was such a contract, without producing it or a copy, ABD argued there was an

**NOT FOR PUBLICATION**

oral contract between the parties. Clearly, ABD has not advanced any evidence in support of the existence of such a contract, so summary judgement is granted as to the contract-based claims. However, "the mere failure of a Complaint to withstand a motion for summary judgment ... should not be thought to establish a rule [11] violation." Simmerman, 27 F.3d at 62; see also Arab African Int'l Bank v. Epstein, 10 F.3d 168, 175 (3d Cir. 1993). It was ABD's predecessor-in-interest, not ABD, which obtained the preliminary and final approvals from the Township for the Pine View development. Since ABD acquired the property after these approvals had been obtained, it was objectively reasonable for it to have believed at the time it filed the Complaint that its predecessor had in fact entered into a written "developer's agreement" with the Township as these types of agreements are not uncommon in New Jersey. See Toll Bros., 388 N.J. Super. at 103 (analyzing written developer's agreement); East Brunswick Sewage Auth., 365 N.J. Super. at 125 (App. Div. 2004)(same); Gruber, 39 N.J. at 1 (same). This is not one of the "exceptional circumstance[s] where a claim or motion is patently unmeritorious or frivolous" and sanctions are warranted. Ford Motor Co., 930 F.2d at 289.

Hearsay statements cannot be relied on in opposition of a summary judgment motion, however reliance on them, among other evidence, does not warrant sanctions. As discussed, the Court is striking the hearsay statements which cannot be reduced to an admissible form at trial. Because the Court will not consider these statements when deciding the summary judgment motion, no further sanction is necessary.

The Township Defendants' final allegation, that ABD gave information to the media in an attempt to embarrass the Township into settling, is not the type of misconduct which Rule 11

**NOT FOR PUBLICATION**

sanctions encompass.  Rule 11 is aimed at papers filed with the Court, not conduct of the parties in their dealings with the media. As such, Rule 11 sanctions are unwarranted.

The Township Defendants have advanced no grounds which warrant imposing sanctions pursuant to Rule 11 on the plaintiff or its counsel.

**CONCLUSION**

For the preceding reasons, Defendants' motions for summary judgment are denied as to the substantive due process claim to the extent that it is based on improper inspection charges to ABD's escrow account; the motions are granted as to all other counts of the complaint. The motion to strike is denied as to the first statement, that the mayor would be "happy" if a certain house were completed before Christmas, and granted as to all other statements. The motion for Rule 11 sanctions is denied.

s/William H. Walls
United States Senior District Judge

**Appearances**

Lawrence P. Cohen, Esq.
Amanda L. Mulvaney, Esq.
Courter, Kobert, Laufer & Cohen
1001 Route 517
Hackettstown, NJ 07840
            Attorneys for Plaintiff

Nancy Stewart, Esq.
Shain, Schaffer & Rafanello, PC
Plaza 202
150 Morristown Road, Suite 105
Bernardsville, NJ 07924
            Attorney for Defendants Monroe Township and Ernest W. Feist, P.E., in
            his official capacity

-31-

**NOT FOR PUBLICATION**

Joseph M. Suarez, Esq.
Suarez & Suarez, PA
2016 Kennedy Boulevard
Jersey City, NJ 07305
          Attorney for Defendants Feist Engineering and Ernest W. Feist, P.E, in his
          personal capacity